CASE NO. 14-4738
UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

MRL DEVELOPMENT I, LLC. ET AL.
Plaintiffs-Appellants,

v.

WHITECAP INVESTMENT CORP., ET AL.
Defendants-Appellees.

On Appeal from the District Court of the Virgin Islands,
Division of St. Thomas and St. John
CV 2013-48

**BRIEF OF APPELLEE GREAT SOUTHERN WOOD PRESERVING, INC.**

Lee M. Hollis
lhollis@lightfootlaw.com
S. Andrew Kelly
dkelly@lightfootlaw.com
John S. Baker, IV
jbaker@lightfootlaw.com
**LIGHTFOOT, FRANKLIN &
WHITE, L.L.C.**
The Clark Building
400 North 20th Street
Birmingham, AL  35203-3200
(205) 581-0700
(205) 581-0799 (Facsimile)

Daryl C. Barnes
dbarnes@bryantbarnes.com
**BARNES & BENOIT, LLP**
1134 King Street, 2nd Floor
Christiansted, VI 00820
(340) 773-2785
(340) 773-5427 (Facsimile)

Attorneys for Defendant-Appellee
Great Southern Wood Preserving, Inc.

## CORPORATE DISCLOSURE

Pursuant to Rule 26.1 and Third Circuit LAR 26.1, Great Southern Wood Preserving, Inc. makes the following disclosure:

1. For non-governmental corporate parties please list all parent corporations: Great Southern Wood Holdings, Inc.

2. For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock: None.

3. If there is a publicly held corporation which is not a party to the proceeding before this Court but which has a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests: None.

4. In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and 3) any entity not named in the caption which is active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant. N/A.

# **TABLE OF CONTENTS**

**Page**

CORPORATE DISCLOSURE ................................................................i

STATEMENT OF JURISDICTION.......................................................v

TABLE OF AUTHORITIES ...............................................................vi

STATEMENT OF THE ISSUES...........................................................1

STATEMENT OF RELATED CASES ...................................................3

STATEMENT OF THE CASE...............................................................4

I.      Procedural History .................................................................4

II.     Statement of Facts..................................................................5

        A.      Great Southern's purported involvement in the treatment of wood. ....5

        B.      Great Southern's treatment of wood to be sold by Putnam. .................7

        C.      Plaintiffs' purchase and use of wood, and discovery of the alleged defect. ..................................................................10

SUMMARY OF THE ARGUMENT ...................................................13

ARGUMENT ...................................................................................16

I.      Standard of Review..............................................................16

II.     The District Court correctly granted summary judgment in favor of Great Southern on Plaintiffs' Negligence and Strict Liability Claims..........16

        A.      The negligence and strict liability claims are barred by the statute of limitations...........................................................17

                1.      The evidence shows that Plaintiffs discovered the defect in 2010...........................................................17

2.      Plaintiffs failed to exercise due diligence that would allow the discovery rule to save their negligence and strict liability claims...........................................................18

B.      The District Court correctly granted summary judgment on the negligence and strict liability claims pursuant to the "gist of the action" doctrine. ...................................................23

C.      Summary judgment on the negligence and strict liability claims may also be affirmed because the claims are barred by the economic loss doctrine. ......................................26

D.      Summary judgment on the negligence and strict liability claims may also be affirmed because Great Southern did not owe Plaintiffs a legal duty..........................................32

III.    The District Court properly granted summary judgment on the common law breach of warranty claims.......................................................33

A.      Based on its finding that the U.C.C. governs, the District Court correctly determined that a four year statute of limitations applies to any warranty claims, whether cast under the common law or the U.C.C...................................................34

B.      There are grounds other than statute of limitations for affirming the District Court's dismissal of the common law breach of warranty claims. ..............................................36

1.      Plaintiffs did not respond to Great Southern's merits based arguments at summary judgment, so their common law breach of warranty claim have been abandoned.......................37

2.      Plaintiffs' common law breach of express warranty claim also fails because Great Southern gave Plaintiffs no express warranty, and any common law implied warranty claims fail for lack of privity and because Plaintiffs are not third party beneficiaries. ....................................38

IV.     The District Court correctly granted summary judgment on Plaintiffs' U.C.C. based breach of warranty claims. ......................................43

A.    The District Court correctly determined the U.C.C. based breach of warranty claims are barred by the statute of limitations and that the "discovery rule" did not toll the running of the statute of limitations. ........................................................................................43

B.    The U.C.C. breach of warranty claim cannot stand even if not barred by the statute of limitations because Great Southern was not in privity with Plaintiffs, and there is no personal injury. ............45

V.   The District Court properly granted summary judgment on Plaintiffs' Deceptive Trade Practices Act claim ...........................................................47

A.    Plaintiffs DTPA claim is barred by the statute of limitations ............48

B.    Plaintiffs' DTPA claim is also barred because they are not a "consumer." ........................................................................................49

VI.  Summary Judgment may be affirmed on all claims because Plaintiffs cannot prove that the wood they claim to be defective was treated by Great Southern. ............................................................................................50

CONCLUSION .................................................................................................53

CERTIFICATIONS ...........................................................................................54

CERTIFICATE OF SERVICE ...........................................................................54

## STATEMENT OF JURISDICTION

The District Court had subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, the diversity jurisdiction statute.  This Court has appellate jurisdiction over this case pursuant to 28 U.S.C. § 1291.  The District Court granted summary judgment to the defendants on November 18, 2014, and Plaintiffs/Appellants appealed on December 12, 2014.  A.1 (Judgment); A.5 (Opinion); A.53 (Notice of Appeal).

# TABLE OF AUTHORITIES

<u>Cases</u>

*Addie v. Kjaer*,
737 F.3d 854 (3d Cir. 2013) ...............................................................24

*Addie v. Kjaer*,
Case No. 2004-135, 2009 WL 453352  (D.V.I. Feb 23, 2009) ...........................26

*Albers v. Deere & Co.*,
599 F. Supp.2d 1142 (D.N.D. 2008) ...................................................31

*Anderson v. Liberty Lobby*,
477 U.S. 242 (1986) ................................................................ 37, 42

*Association of Apartment Owners of Newtown Meadows ex. rel.
its Bd. of Directors v. Venture 15, Inc.*,
167 P.3d 225 (Haw. 2007) ...................................................................31

*Bell v. Chase Manhattan Bank*,
40 F. Supp.2d 307 (D.V.I. 1999) .........................................................24

*Blakeman v. Freedom Rides, Inc.*,
2013 WL 3503165 (D. Del. July 10, 2013) ........................................37

*Brady v. Cintron*,
Civ. No. 2010-0014, 2011 WL 4543906 (V.I. Sept. 27, 2011) ...........................49

*Campbell v. Sussex County Federal Credit Union*,
___ Fed.Appx. ___, 2015 WL 690435 (3d Cir. Feb. 19, 2015) .............. 26, 37, 42

*Carraway v. Borough of Wilkinsburg*,
2009 WL 2981955 (W.D.Pa. Sept. 11, 2009) ......................................38

*Casa Clara v. Charley Toppins & Sons, Inc.*,
620 So. 2d 1244 (Fla. 1993) ...............................................................30

*Chelcher v. Spider Staging Corp.*,
892 F. Supp. 710 (D.V.I. 1995) .........................................................51

*Commonwealth Propane v. Petrosol Int'l*,
818 F.2d 522 (6th Cir. 1987) .............................................................41

*Conroy v. Leone*,
    316 F. App'x 140 (3d Cir.2009) ........................................................38

*Cooper Power Systems, Inc. v. Union Carbide Co.*,
    123 F.3d 675 (7th Cir. 1997) ...........................................................41

*Corrugated Paper Products, Inc. v. Longview Fibre, Co.*,
    868 F.2d 908 (7th Cir. 1989) ..................................................... 40, 41

*Debiec v. Cabot Corp.*,
    352 F.3d 117 (3d Cir. 2003) ............................................................23

*Duquesne Light Co. v. Westinghouse Elec. Corp.*,
    66 F.3d 604 (3d Cir. 1995) ..............................................................27

*East River SS. Corp. v. Transamerica Delaval, Inc.*,
    476 U.S. 858, 106 S. Ct. 2295 (1986) ..............................................27

*eToll, Inc. v. Elias/Savion Adver., Inc.*,
    811 A.2d 10 (Pa. Super. Ct. 2002) .............................................. 24, 25

*Farm Credit Bank of Louisville v. U.S. Mineral Prods. Co.*,
    864 F. Supp. 643 (W.D. Ky. 1994) ..................................................35

*First Fidelity Bank, N.A. v. First Interstate Bank of Oregon, N.A.*,
    716 F. Supp. 1359 (D. Ore. 1989) ...................................................36

*Fombrun v. Controlled Concrete Products, Inc.*,
    Civ. No. 198/1984, 1985 WL 1177813 (V.I. Terr. Ct. Nov. 7, 1985) ................43

*Grams v. Milk Products, Inc.*,
    2004 WL 1418010 (Wis. App. June 17, 2004) .................................41

*Gregory v. Atrium Door & Window Co.*,
    415 S.e.2d 574 (N.C. App. 1992) ....................................................30

*Hitachi Electronic Devices (USA), Inc. v. Platinum Technologies, Inc.*,
    621 S.E. 2d 38 (S.C. 2005) ..............................................................35

*Hughes Aircraft Co. v. United States ex rel. Schumer*,
    520 U.S. 939 (1997) .........................................................................48

vii

*Idahoan Fresh v. Advantage Produce, Inc.*,
   157 F.3d 197 (3d Cir. 1998) ...................................................................45

*Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*,
   90 F.3d 737 (3d Cir. 1996) ...................................................................16

*Island Insteel Sys., Inc. v. Waters*,
   296 F.3d 200 (3d Cir. 2002) ......................................................... 48, 49

*Jimenez v. Superior Court*,
   58 P.3d 450 (Cal. 4th 2002)...................................................................30

*Kaiser Aluminum & Chemical Corp. v. Ingersoll-Rand Co.*,
   519 F.Supp. 60 (S.D. Ga. 1981) ...........................................................41

*Knox v. Quest Diagnostics, Inc.*,
   2012 WL 400333 (D.V.I. 2012) ............................................................49

*Lawlor v. ESPN Scouts, LLC*,
   2011 WL 675215 (D.N.J. Feb. 16, 2011)..............................................38

*L'Henri, Inc. v. Vulcan Materials Co.*,
   2010 WL 924259 (D. V.I. Mar. 11, 2010) ............................................19

*Lieberman v. Cambridge Partners, LLC*,
   432 F.3d 482 (3d Cir. 2005) .................................................................48

*Matos v. Nextran*,
   2009 WL 2477516 (D.VI. Aug. 10, 2009) ............................. 38, 39, 46

*Mest v. Cabot Corp.*,
   449 F.3d 502 (3d Cir. 2006) ......................................................... 18, 19

*Mitchell v. General Motors, LLC*,
   No. 3:13-CV-498-CRS, 2014 WL 1319519 (W.D. Ky. Mar. 31, 2014)..............35

*MRL Development I, LLC v. Whitecap Investment Corp.*,
   2014 WL 793132 (D.V.I. Feb. 26, 2014) ..............................................49

*O'Brien v. Eli Lilly & Co.*,
   668 F.2d 704 (3d Cir. 1981) .................................................................23

*Omni USA, Inc. v. Parker-Hannifin Corp.*,
  964 F. Supp.2d 805 (S.D. Tex. 2013)...................................................................35

*OneBeacon Ins. Co. v. Deere & Co.*,
  778 F. Supp.2d 1005 (E.D. Mo. 2011) ................................................................31

*Potomac Plaza Terraces v. QSC Prods.*,
  868 F. Supp. 346 (D.D.C. 1994)..........................................................................27

*Rector v. Karlstad Farmers Elevator*,
  No. A07-0693, 2008 WL 3287910 (Minn. App. Aug. 12, 2008) ........................36

*Redarowicz v. Ohlendorf*,
  441 N.E.2d 324 (Ill. 1982)..................................................................................31

*Seals v. City of Lancaster*,
  553 F.Supp.2d 427 (E.D. Pa.2008).......................................................................37

*Sickler v. Mandahl Bay Holding Inc.*,
  2014 WL 3107449 (V.I. Super. July 7, 2014)......................................................32

*Spiegel v. Sharp Electronics Corp.*,
  446 N.E.2d 1040 (1st Dist. Ill. 1984) ..................................................................41

*Slate Printing Co. v. Metro Envelope Co.*,
  532 F.Supp. 431 (N.D. Ill. 1982).........................................................................41

*Transport Corp. of America v. IBM Corp., Inc.*,
  30 F.3d 953 (8th Cir. 1994) .................................................................................30

*Werwinski v. Ford Motor Co.*,
  286 F.3d 661 (3d Cir.2002) .................................................................................26

*White v. S&E Bakery*,
  1991 WL 11818240 (V.I. Terr. Ct. 1991) ............................................................36

*Whitecap Invest. Corp. v. Putnam Lumber & Export Co.*,
  2013 WL 2365406 (D.V.I. 2013) ..................................................... 39, 42, 45, 47

<u>Statutes</u>

28 U.S.C. § 1291 ....................................................................................................v

28 U.S.C. § 1332....................................................................................................v

ix

5 V.I.C. § 31(5)(A)..................................................................................16

11a V.I.C. § 2-313 and § 2-314-315 ......................................................46

11a V.I.C. § 2-318........................................................................ 46, 47

11a V.I.C. § 2-725(2) ................................................................ 2, 14, 43

Rules

Fed. R. App. P. 32(a)(7)(C) ....................................................................54

Other Authorities

American Law of Products Liability 3d, § 114:6 (2013)........................................31

Restatement (Second) of Contracts § 302................................................40

Restatement (Third) of Torts: Products Liability § 21 ...........................................30

## STATEMENT OF THE ISSUES

1. Whether the District Court's order granting summary judgment on the tort claims of negligence and strict liability should be affirmed because: (a) the claims are barred by two-year statute of limitations where Plaintiffs allege they "discovered the wood was defective" in 2010, but did not file this lawsuit until February 13, 2013; (b) the claims are barred by the "gist of the action doctrine;" (c) the claims are barred by the economic loss doctrine; and (d) Great Southern Wood Preserving, Inc. did not owe Plaintiffs a legal duty.

2. Whether the District Court's order granting summary judgment on the common law breach of warranty claims should be affirmed because: (a) the four year statute of limitations under the U.C.C. governs breach of warranty claims cast under the common law, and the claims are time barred; (b) there was no warranty given, there was no privity, and Plaintiffs were not third party beneficiaries to any contract; and (c) Plaintiffs effectively abandoned the claims by not responding to Great Southern's arguments at summary judgment based on the merits.

3. Whether the District Court's order granting summary judgment on the U.C.C. based warranty claims should be affirmed because: (a) the action is time barred, as the "discovery rule" does not apply to a U.C.C. breach of warranty claim where the relevant statute states that a "cause of action

accrues when the breach occurs, regardless of the aggrieved party's lack of

knowledge of the breach" and "[a] breach of warranty occurs when tender of

delivery is made."  11a V.I.C. § 2-725(2); and (b) there was a lack of privity

and no personal injury.

4. Whether the District Court's order granting summary judgment on the

Virgin Islands Deceptive Trade Practices Act ("DTPA") claim should be

affirmed because: (a) the claim is time barred pursuant to the two year

statute of limitations that was in place at the time Plaintiffs filed this lawsuit;

(b) the claim would still be time barred even under the new six year statute

of limitations where any alleged wrongdoing occurred no later than 2006,

and this lawsuit was not filed until February 13, 2013; (c) neither plaintiff

was a "consumer" as defined in the act, so Plaintiffs cannot bring a DTPA

claim; (d) the claim is barred by the economic loss doctrine; and (e)

Plaintiffs effectively abandoned the claim by not responding to Great

Southern Preserving Inc.'s merit based arguments raised at summary

judgment.

5. Whether the District Court may be affirmed because Plaintiffs have not

presented substantial evidence that the wood at issue was treated by Great

Southern Wood Preserving, Inc.

## STATEMENT OF RELATED CASES

There are three related appeals currently pending.  On April 10, 2015, appellee Great Southern appealed the District Court's denial of its motion for attorney's fees and costs, which Great Southern is entitled to by statute under Virgin Islands law.  Although the District Court denied the motion for attorney's fees and costs without prejudice, Great Southern appealed to ensure that its rights were preserved.  Co-appellees Putnam Lumber & Export Company, Putnam Family Properties, Inc., and Whitecap Investment Corporation d/b/a Paradise Lumber, filed similar appeals raising the same issues.  Those appeals are pending as Case Nos. 15-1921, 15-1922, and 15-923.

On April 22, 2015, this Court issued an order questioning jurisdiction over those appeals as perhaps not being an appeal from a final order.  That issue is under submission, and those appeals are scheduled for a telephone mediation on June 25, 2015.

## STATEMENT OF THE CASE

In this case, Plaintiffs allege that they purchased wood for a construction project at a rental house in the Virgin Islands and that the wood was defective and rotted prematurely.  Construction was complete in 2006, Plaintiffs claim they noticed the wood was defective in 2010, and they did not file this lawsuit until February 2013.  Plaintiffs asserted various tort based and contract based claims, including negligence and strict liability.

Among the defendants is Great Southern Wood Preserving, Inc. ("Great Southern"), which pressure treats lumber.  Great Southern had no contact at all with Plaintiffs, and there is, at best, only scant evidence that Great Southern treated any of the wood Plaintiffs claim is defective.

The District Court granted summary judgment in favor of Great Southern because, among other reasons, the claims are barred by the statute of limitations. The judgment is due to be affirmed on multiple grounds.

## I.    Procedural History

Plaintiffs filed this lawsuit on February 13, 2013 against Great Southern, Putnam Lumber & Export Company, Putnam Family Properties, Inc. (collectively "Putnam"), and Whitecap Investment Corporation d/b/a Paradise Lumber ("Whitecap").  A.102 ( Complaint).  The Counts of the Amended Complaint brought against Great Southern (which were also brought against all defendants)

4

were: Breach of Warranty (Count 3); Negligence (Count 4); Strict Liability (Count 5); and Deceptive Trade Practices (Count 6).  A.112-24 (Amended Complaint).

On November 18, 2014, the District Court granted summary judgment on all counts in favor of all defendants.  A.1 (Judgment); A.5 (Opinion).

## II.    Statement of Facts

A.    <u>Great Southern's purported involvement in the treatment of wood.</u>

Great Southern is in the business of pressure treating lumber and other products related to the building industry.  A.227 ( William Freeman depo., p. 10). Great Southern does not operate saw mills that process raw lumber, but rather purchases finished lumber products, which are shipped to and treated at one of Great Southern's sixteen treatment facilities located in the continental United States.  A.227 (Freeman depo., pp. 10-11).  Great Southern does not manufacture the chemicals it uses to pressure treat lumber.  A.232 (Freeman depo., p. 30). Since Great Southern began doing business in the early 1970's, it has always purchased the treatment chemicals it applies from outside suppliers, primarily Osmose, Inc. *Id.*

Typically, Great Southern pressure treats the lumber it purchases, affixes a "YellaWood®" end tag to the lumber, and sells it as wholesale product to various retailers throughout the United States. *See* A.233 (Freeman depo., pp. 34-35).

"YellaWood®" generally carries a limited express warranty,[1] the terms of which are set forth on Great Southern's website. *See* A.276 (Freeman depo., p. 204). The lumber Great Southern uses for its YellaWood® product is typically checked for moisture content before it is treated and tested after treatment by Great Southern and periodically, a third-party inspection agency to confirm that the proper retention and penetration levels were met. *See* A.233-24 (Freeman depo., pp. 33-37).

Occasionally, Great Southern provides for a customer "Treating Services Only." ("TSO"). A.233; 243 (Freeman depo., pp. 34-35, 76). Treating Services Only is precisely what it says it is: treating service only. When Great Southern performs Treating Services Only, Great Southern does not purchase the wood from saw mills. A.233 (Freeman depo., pp. 35-36). Rather, the customer purchases the wood and has it delivered to one of Great Southern's treatment facilities with instructions for the treatment process. A.233 (Freeman depo., pp. 34-36). For Treating Services Only wood, the customer determines to what level of chemical the wood is to be pressure treated, not Great Southern. A.233; 267; 274; 286 (Freeman depo., pp. 35-36, 172, 196, 235). Additionally, Great Southern does not inspect TSO wood for moisture prior to treatment or test it post-treatment. Following treatment, the wood is either shipped to a destination designated by the

---

[1] This warranty is provided by Osmose, Inc. *See* A.276 (Freeman depo., p. 204).

customer or picked up by the customer.  A.233-34 (Freeman depo., pp. 36-37).

During this entire process, Great Southern never owns or takes title to the wood, it

merely treats it to the customer's specifications.  *See id*.; *see also* A.368

(Deposition of Mike Noble, pp. 210-12).

The "YellaWood®" tag that Great Southern affixes to its own wood that it

purchases and treats for sale is not attached to Treating Services Only wood.

A.233 (Freeman depo., pp. 35-37)*.*  Likewise, Great Southern does not provide a

warranty for Treating Services Only wood, principally because Great Southern was

not involved in purchase of the lumber and cannot attest to the quality and

moisture content of the wood that was delivered to it for treatment.  A.235,

(Freeman depo., p. 44).  Wood quality and moisture content can have an impact on

the effectiveness of the treatment process.  A.548-51 (Deposition of Kevin Flynn

pp. 174-76, 173).  Importantly, the tag on TSO wood does not carry the

information that is required for it to comply with building codes for use in

construction.  A.565-567 (Flynn depo., pp. 190-92).  TSO wood is not tested for

retention and penetration levels post treatment because the customer only pays for

treating services.  *See* A.233 (Freeman depo., pp. 34-36).

B.    Great Southern's treatment of wood to be sold by Putnam.

Beginning in 2003 and continuing to 2009, Great Southern did business with

Putnam out of Great Southern's treatment facility in Jesup, Georgia.  A.253-54

7

(Freeman depo., pp. 116-18). Nearly all of Great Southern's business with Putnam was for Treating Services Only as described above, with the only exception that Putnam might on occasion buy a unit of YellaWood® from Great Southern's inventory to complete an order. A.243; 251 (Freeman depo., pp. 76, 108). There is no evidence that any of the wood used in the construction of Plaintiffs' home or addition was Great Southern's YellaWood® product. *See* A.921-22 (Lucht depo., pp. 164-65) (stating that the only end tags Mr. Lucht saw were green); *see also* A.658 (Rourke depo., p. 112) (Rourke acknowledging that he never saw a YellaWood® tag at Whitecap).

There was no written contract that governed the overall business relationship between Putnam and Great Southern. *See* A.345-46 (Noble depo., pp. 121-22). Transactions were handled on a case-by-case basis and typically began when Putnam placed an order for Treating Services Only over the phone, by fax or via email. *See* A.346 (Noble depo., p. 123). Great Southern would then treat the wood to Putnam's specifications. *See* A.233-34 (Freeman depo., pp. 35-37). After the wood was treated, it was generally shipped to Putnam's Amware warehousing facility in nearby Jacksonville, Florida. A.233-34; 283; 291 (Freeman depo. pp. 36-37, 223, 240, 255); *see also* A.368-69 (Noble depo., pp. 210-14). None of this Treating Services Only wood was affixed with a YellaWood® tag, nor did it

8

typically contain any written designation that it was treated by Great Southern or any reference to a warranty.  *See* A.233; 267 (Freeman depo., pp. 35-36, 172).

During the process described above, Putnam never informed Great Southern, in writing or otherwise, to whom the lumber that Great Southern was treating would ultimately be sold, the intended use, or the ultimate destination of the wood. A.306 (Freeman depo., pp. 315-16); *see also* A.368 (Noble depo., pp. 210-13).  For the Treating Services Only wood at issue in this case, Great Southern's role was limited to receiving, treating, and returning the wood to Putnam.  *See* A.233 (Freeman depo., pp. 34-36); A.368 (Noble depo., pp. 211-13).  Great Southern invoiced Putnam upon delivery to Putnam's designated Jacksonville warehouse and was paid for its service regardless of where the wood ultimately would be shipped.  *See* A.368 (Noble depo., pp. 210-13); *see also* A.306 (Freeman depo., pp. 315-16).

Once Putnam took delivery of the lumber at its Amware facility, the lumber was then commingled with wood treated by other treating service providers, and warehoused until it was sold by Putnam.  *See* A.368-69 (Noble, pp. 213-15). Putnam then exported the wood that it sold out of Amware to numerous lumber retailers around the world.  A.332; 368-69 (Noble depo., pp. 67, 213-15).  One such retailer was Whitecap Investment Corporation d/b/a Paradise Lumber.  *See*

9

A.635; 702; 712 (Rourke depo., pp. 19-20, 282, 321-22). Whitecap sold treated

lumber products in the U.S. Virgin Islands. *See* A.634 (Rourke depo., p. 14).

During the relevant time period, Whitecap purchased treated lumber from

Putnam and other wholesalers and in turn retailed the lumber to end users primarily

on the island of St. John. *See* A.709; 710-11 (Rourke depo., pp. 308-09, 314-17).

Roughly twenty percent (20%) of the treated lumber Whitecap sold during the

relevant time period came from wholesalers other than Putnam. *See* A.649

(Rourke depo., p. 74). At the time that it was retailed, treated lumber sold by

Whitecap did not generally have any label that identified, by name, the entity that

treated, distributed or sold it. *See* A.709-11 (Rourke depo., pp. 310-17). Any end

tags on the wood treated by Great Southern that Whitecap may have sold would

have generally only contained information about the chemicals.

C.    Plaintiffs' purchase and use of wood, and discovery of the alleged defect.

In 2002, Plaintiff MRL Development I, LLC ("MRL") purchased a house on

the island of St. John in the U.S. Virgin Islands. Plaintiff Michael Lucht was the

sole member of MRL, and he eventually purchased the house from MRL. The

property was intended to be a vacation rental property that Mr. Lucht could utilize

on occasion. A.779 (Lucht depo., p. 23).

At the time of purchase, there was one structure on the property, and Plaintiffs completed an addition to the property in December 2006. A.784 (Lucht depo., p. 28). The original structure and the addition operate as one home and are integrated into one home. A.777-78 (Lucht depo., pp. 21-22).

Plaintiff Lucht is experienced with using pressure treated wood, and based on this experience he expected the wood he purchased in this case to last 50 years. A.792; 912-13 (Lucht depo., pp. 36; 155-56). Instead, in 2010 he claims he "discovered the wood was defective." A.102 ( Complaint, ¶ 1); A.820 (Lucht depo. p. 64). Mr. Lucht also refers to "the half-dozen or so outside deck boards he replaced in 2010" (Appellants' Brief, p. 10), and that in 2010 he began to notice "boards installed in his deck that were rotting." Appellants' Brief, p. 4.

Most of the lumber used in constructing the 2006 addition was purchased from Whitecap by MRL's contractor in 2004, 2005, and early 2006. A.791; 793-94 (Lucht depo., pp. 35, 37-38). Plaintiffs relied on the contractor to make sure the appropriate materials were used in the home. A.791 (Lucht depo., p. 35). Plaintiffs allege that the lumber was improperly treated, which has caused it to decay and/or fail prematurely. Plaintiffs, however, do not claim any personal injury to Mr. Lucht or any renters. *See* A.934 (Lucht depo., p. 177).

Lucht had some interaction with Whitecap prior to the lawsuit, but he does not recall having any discussions with Whitecap regarding chemical treatments. In

addition, to his knowledge, no one made any representations as to the quality of pressure treatment being used.  A.812 (Lucht depo., p. 56).

Prior to this lawsuit, Lucht had not even heard of Great Southern, nor did he have any interaction with Great Southern.  *See* A.813-14 (Lucht depo., pp. 57-58).

In December 2012, Lucht purchased the property from MRL for $10.00. A.824-25 (Lucht depo., pp. 68-69).  At the time of sale, he was aware of the premature failing of lumber at the property.  A.825 (Lucht depo., p. 69).

Prior to the onset of this dispute, Great Southern had no contacts or communications with Whitecap.  *See* A.696 (Rourke depo., pp. 256-58).  To date, Great Southern has never sold any wood to Whitecap, treated any wood for Whitecap, entered into any contract with Whitecap or otherwise done business with Whitecap.  A.696; 697 (Rourke depo., pp. 256, 262).

## SUMMARY OF THE ARGUMENT

The District Court correctly granted summary judgment on all claims and is due to be affirmed. As for the negligence and strict liability claims against Great Southern, Plaintiffs claim that they noticed the wood at issue was rotting and defective in 2010, but they did not file this lawsuit until February 2013. Thus, these claims are barred by the two year statute of limitations. The District Court was also correct in finding these claims to be barred by the gist of the action doctrine, as the gist of this action is based on contract rather than tort.

The District Court may also be affirmed on the negligence and strict liability claims under the economic loss doctrine and because Great Southern owed no legal duty to Plaintiffs. The economic loss doctrine is implicated because Plaintiffs have suffered no personal injury and they are only claiming damages as to the structure itself. As such, there is no liability in tort. Also, Great Southern had no relationship with Plaintiffs, and therefore owed no legal duty to Plaintiffs, as it merely treated the wood to the specifications dictated by its customer, Putnam. The District Court did not find it necessary to address these two issues, but they were raised by Great Southern at summary judgment, and this Court may affirm the District Court on any ground that has support in the record.

As for the common law breach of warranty claims, the District Court found that this case is governed by the U.C.C., and Plaintiffs have not raised that finding

13

as error on appeal.  Accordingly, the common law breach of warranty claims were displaced by the U.C.C., and such claims are barred by the U.C.C. four year statute of limitations.  Furthermore, the common law breach of warranty claims fail for multiple reasons other than the statute of limitations.  First, Plaintiffs did not respond to Great Southern's merits based summary judgment arguments, so Plaintiffs have abandoned these claims.  Second, no express warranty was made by Great Southern.  Third, any common law implied warranty claims fail for lack of privity, and because Plaintiffs were not third party beneficiaries of any agreement between Great Southern and Putnam.

Plaintiffs' breach of warranty claims under the U.C.C. were properly dismissed based on the four year statute of limitations.  The Virgin Islands code (and U.C.C.) states explicitly that a "cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach and [a] breach of warranty occurs when tender of delivery is made."  11a V.I.C. § 2-725(2).  Plaintiffs purchased the wood in 2006 at the latest, and this lawsuit was not filed until February 2013, so this claim is time barred.  Furthermore, any U.C.C. based warranty claims fail on the merits, as there was no privity between Great Southern and Plaintiffs, and Plaintiffs did not suffer personal injury.

Plaintiffs' claim under the Virgin Islands Deceptive Trade Practices Act was also properly dismissed under the two year statute of limitations.  Furthermore,

14

Plaintiffs are not a "consumer" under the act, and because they did not respond to merits based arguments at summary judgment, this claim has been abandoned.

Finally, the District Court is due to be affirmed as to both tort and contract claims on a basic fundamental fact: Plaintiffs have not met their burden of proving that the wood at issue was treated by Great Southern.  Great Southern treated wood for Putnam, Putnam sold some of this wood to Whitecap (Putnam also sold some wood to Whitecap that was not treated by Great Southern), and Plaintiffs purchased the wood from Whitecap.  Approximately 20% of the wood sold by Whitecap came from sources other than Putnam and was not treated by Great Southern.  Plaintiffs have not met their burden of linking the wood at issue to Great Southern, which is another reason the District Court should be affirmed.

## ARGUMENT

### I.    Standard of Review.

This is an appeal of an order granting summary judgment as to all claims, and therefore all issues raised are subject to a *de novo* standard of review, applying the same standard as the District Court.  *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 743 (3d Cir. 1996).

### II.    The District Court correctly granted summary judgment in favor of Great Southern on Plaintiffs' Negligence and Strict Liability Claims.

It is undisputed that the statute of limitations for Plaintiffs' tort claims is two years.  5 V.I.C. § 31(5)(A).  Here, Plaintiffs alleged in their Complaint and elsewhere that they discovered "the wood was defective" in 2010 – more than two years prior to the suit.  *See* A. 102, ¶ 1.  As a result, the District Court correctly granted summary judgment on the negligence and strict liability claims on that basis.

But Plaintiffs' claims fail as a matter of law for other reasons as well.  The District Court correctly determined that the tort claims were barred by the "gist of the action" doctrine.  In addition, the claims are barred by the economic loss doctrine and because Great Southern did not owe Plaintiffs a legal duty.  Finally, as discussed in Part VI, Plaintiffs cannot meet their burden of proving that the wood was treated by Great Southern.

In short, the District Court is due to be affirmed.

A.    <u>The negligence and strict liability claims are barred by the statute of limitations.</u>

Plaintiffs assert two bases for reversal on the statute of limitations issue. First, they argue that "[t]he district court erroneously held as a matter of law that Lucht discovered the defective lumber in 2010."  Appellants' Brief, p. 10.  Second, Plaintiffs claim that the District Court erred by finding that Lucht "failed to exercise due diligence in investigating his potential claims" and that, therefore, the statute of limitations was not tolled.  Appellants' Brief, p. 10.

The District Court was correct on both issues and is due to be affirmed.

1.    <u>The evidence shows that Plaintiffs discovered the defect in 2010.</u>

First, the District Court correctly concluded that "Lucht discovered the defective lumber in 2010."  This fact is undisputed based on Plaintiffs' own admissions.  As the District Court properly observed, the complaint filed on February 13, 2013 states unequivocally that in 2010 "the Plaintiffs discovered the wood was defective."  A.102 (Complaint, ¶ 1).

Plaintiffs have never disputed this fact.  In fact, they have embraced it.

In their brief in opposition to Great Southern's motion for summary judgment, Plaintiffs admitted that it was "the end of 2010 that Plaintiffs began noticing an issue."  A.1015 (Plaintiffs' Summary Judgment Opposition Brief, p. 5).  In their Appellate brief to this Court, Plaintiffs refer to "the half-dozen or so

outside deck boards [Mr. Lucht] replaced in 2010" (Appellants' Brief, p. 10), and

that in 2010 Lucht began to notice "boards installed in his deck that were rotting."

Appellants' Brief, p. 4.  This is all consistent with the deposition testimony of Mr.

Lucht.  A.820 (Lucht depo., p. 64).  Given that Plaintiffs alleged in their complaint

that they discovered in 2010 that the wood was "defective," coupled by the

subsequent testimony and pleadings, there is no question that the District Court

was correct in concluding that Plaintiffs "discovered the defective lumber in

2010," and any argument to the contrary is frivolous.

> 2.    Plaintiffs failed to exercise due diligence that would allow the
>        discovery rule to save their negligence and strict liability
>        claims.

Plaintiffs also argue that the District Court erroneously found that Lucht

"failed to exercise due diligence in investigating his potential claims."  Appellants'

Brief, p. 10.  This argument, which is another way of saying that their tort claims

should have been saved by the "discovery rule," is also due to be rejected.

The discovery rule "tolls the accrual of the statute of limitations when a

plaintiff is unable, *despite the exercise of due diligence*, to know of the injury or its

cause."  *Mest v. Cabot Corp.*, 449 F.3d 502, 510 (3d Cir. 2006) (emphasis in

original).  The standard for the discovery rule in the Virgin Islands is well settled:

"the applicable statute of limitations will not begin to run until the plaintiff knew

or should have known through the exercise of reasonable diligence sufficient

critical facts to put him on notice that (1) he has been injured and (2) the actions or inactions of a particular party could have been a cause of that injury." *L'Henri, Inc. v. Vulcan Materials Co.*, 2010 WL 924259, at *3 (D. V.I. Mar. 11, 2010) (internal cite and quotes omitted).

"The discovery rule focuses not on the plaintiff's actual knowledge, but rather on whether the knowledge was known, or through the exercise of diligence, knowable to the plaintiff." *Id*. (internal quotes and citations omitted). "To demonstrate reasonable diligence, a plaintiff must establish that he pursued the cause of his injuries with those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others." *Id*. (internal quotes and citations omitted). "As soon as the plaintiff either has discovered or, exercising reasonable diligence, should have discovered the injury and its cause, the statute of limitations begins to run." *Mest*, 449 F.3d at 511.

Plaintiffs "bear[] the burden of demonstrating that [they] exercised reasonable diligence in determining the existence and cause of [their] injury." *Mest*, 449 F.3d at 511. The District Court properly concluded that Plaintiffs did not meet this burden.

The statute of limitations began to run, at the very latest, when Plaintiffs noticed rotten wood in 2010. They demonstrated little effort, much less the

reasonable diligence required to toll the statute of limitations past that point.

Although Plaintiffs claim in their appellant brief that they "immediately" began a

diligent search for the cause once the rotten wood was noticed, the <u>entirety</u> of the

alleged "diligent search" is one conversation in 2011 that is described in less than

one page of Mr. Lucht's deposition testimony.  Specifically, after a carpenter

friend of his told him over dinner that he had been replacing rotten wood all over

the island, Mr. Lucht testified that he had <u>one</u> conversation with someone at

Whitecap that he describes as follows:

> Q. Can you tell me everything you recall that was told to you about bad wood during that discussion?
>
> A.  It was just a relative acknowledgement that, yes, bad wood has been sold.
>
> Q.  And what was your reaction?
>
> A.  I just wanted to confirm my – I was just there to confirm what I had heard.  As opposed to go through the rumor mill, I went to the source.  And when I was told that – he confirmed what I had heard, then I recognized that I had something I needed to kind of back away from and manage my way through it.

A.850 (Lucht depo., pp. 94; 1-14).

This exchange is the <u>only</u> evidence that Plaintiffs rely upon to support their

purported diligent search for the cause of their injury.  *See* A.1015 (Plaintiffs'

Summary Judgment Opposition Brief, p. 5) (citing this deposition exchange as the

sole basis for their argument that they "immediately began a diligent search for the

cause."). And given that Mr. Lucht says that he "was just there to confirm what [he] had heard," he already knew there was a problem.

Other undisputed evidence supports the conclusion that Plaintiffs have fallen far short of meeting their burden of demonstrating "reasonable diligence." First, as the District Court recognized, Mr. Lucht testified that, based on his prior experience with pressure treated lumber, he expected it to last for 50 years. A.792 (Lucht depo., p. 36) (when asked if he discussed the quality of lumber with the contractor, responding that "[m]y prior experience with pressure treated lumber, it was all 50-year material, so I never had any reason to question it."); A.823 (Lucht depo., p. 67) (stating that the lumber "would last 50 years."); A.912-13 (Lucht depo., pp. 155-56) (stating "prior experience" and his "own use" as the basis of his belief that the wood should last for 50 years). Yet, when he first noticed it was rotting and defective in 2010, four to five years after he bought it, he did almost nothing.

Second, one conversation with a Whitecap employee the year after he first noticed wood was rotting and defective is not reasonable diligence, especially when all that conversation did was confirm what he says he already knew.

Third, when Mr. Lucht spoke to the Whitecap employee, he did not ask who treated the wood, who was at fault, or do anything to discover the source of the problem. Every time he went to Whitecap in 2010 to purchase lumber to replace

the boards that had rotted prematurely, he could have simply asked those questions and gained the information necessary to file suit. But he made absolutely no effort whatsoever to investigate in 2010.

Fourth, around that same time Plaintiffs claim the wood was defective in 2010, Whitecap had sued both Putnam and Great Southern, alleging that they were to blame for the problems with the wood that Whitecap had sold to the end users. *See Whitecap Investment Corp. d/b/a Paradise Lumber v. Putnam Lumber & Export Company, et al.*, 3:10-cv-139-CVG-RM, formerly pending in the District Court of the Virgin Islands, Division of St. Thomas and St. John. This was a matter of public record, it would have been uncovered with a reasonably diligent search, and it placed Plaintiffs on constructive notice of this information.

Fifth, there is no question that Plaintiffs knew the wood was purchased from Whitecap. Even if their purported "reasonable diligence" did not reveal Putnam and Great Southern, they could have timely sued Whitecap and learned the identities of Putnam and Great Southern through discovery. They failed to do this.

In sum, the District Court correctly concluded that Plaintiffs did not "'explain why [Lucht] was unable to discover the operative facts for his cause of action sooner than he did.'" A.44 (Opinion, p. 40) (quoting *Van Buskirk v. Carey Canadian Mines. Ltd.*, 760 F.2d 481, 487 (3d Cir. 1985). Plaintiffs have put forth no evidence that they attempted to discover who treated the wood or who sold the

22

wood to Whitecap.  Plaintiffs did not even sue Whitecap within two years, even

though they knew all along that Whitecap had sold the lumber, and they have put

forth no evidence that they used reasonable diligence to discover the cause or the

identities of others in the supply chain.  The alleged problem was not latent for

more than two years before they filed suit, so the District Court correctly found

that the negligence and strict liability claims are time barred.  *See also*, *Debiec v.*

*Cabot Corp.*, 352 F.3d 117, 129 (3d Cir. 2003) ("where the facts are so clear that

reasonable minds cannot differ, the commencement period may be determined as a

matter of law."); *O'Brien v. Eli Lilly & Co.*, 668 F.2d 704, 711 (3d Cir. 1981)

("We agree with the district court that, as a matter of law, the crucial knowledge

was knowable to appellant in 1976 and could have been obtained through the

exercise of due diligence.  Therefore, its conclusion that the action is barred by the

statute of limitations must be affirmed.").

B.     The District Court correctly granted summary judgment on the
       negligence and strict liability claims pursuant to the "gist of the
       action" doctrine.

In addition to finding that the negligence and strict liability claims are barred

by the statute of limitations, the District Court also concluded that those claims are

barred by the "gist of the action" doctrine.  The District Court was correct.

The gist of the action doctrine allows tort claims to proceed where a contract

is also at issue only when the tort ascribed to the defendant is the "gist of the

23

action" and the contract is merely collateral. *See Bell v. Chase Manhattan Bank*, 40 F. Supp.2d 307, 319 at n. 20 (D.V.I. 1999); A.40-42 (Opinion, pp. 36-38). As the District Court recognized, "[w]here the tort only occurs upon violation of a contractual term, the tort claim cannot be brought under the gist of the action doctrine." A.42 (Opinion, p. 38) (citing *Addie v. Kjaer*, 737 F.3d 854, 865-66 (3d Cir. 2013)).

In sum, the gist of the action doctrine bars tort claims: (1) which arise solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim, or the success of the tort claim is wholly dependent on the terms of a contract. *Addie*, 737 F.3d at 866 (citing *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 19 (Pa. Super. Ct. 2002)).

The District Court properly concluded that the gist of the action doctrine barred the tort claims. As the District Court stated, Plaintiffs argued "that the defendants breached their duties of care under tort law by failing to treat the lumber at issue in conformity with the contracts between the parties ... The bad act alleged is based on a failure to comply with something included in the relevant contract." A.42 (Opinion, p. 38). Thus, the District Court concluded that the

24

negligence and strict liability claims "are thus the precise sorts of claims that are barred by the gist of the action doctrine as a matter of law." *Id.*

Plaintiffs have put forth no legitimate arguments as to why the gist of the action doctrine should not apply. Instead, they just make a passing argument that their claims are "for breach of separate duties imposed by social policy, not the parties' private contracts." Appellants' Brief, p. 21. A cursory review of the evidence and arguments in this case, however, shows otherwise.

To illustrate, Great Southern's customer was Putnam, and both Plaintiffs and Putnam have alleged that "the customer would request that Great Southern treat wood to a specific retention." A.960, para. 3 (Putnam's Counterstatement of Undisputed Facts) & A.955, p. 1 (Plaintiffs' Response to Great Southern's Statement of Undisputed Facts) (Plaintiffs adopting, among other things, paragraph 3 of A.960). That is a purported contractual term between Great Southern and Putnam, as opposed to some duty imposed by social policy. Plaintiffs and Putnam have alleged in this case that "Great Southern provides warranties for Treatment Services Only wood by way of, among other things, its invoices to customers wherein specific treatment levels and specific treatment chemicals are identified as having been used and applied with regard to the Treatment Services Only wood." A.960, para. 4 & A.955, p. 1 (Plaintiffs adopting, among other things, paragraph 4 of A.960). Thus, the "bad acts" alleged are based on the purported failure to

comply with Great Southern's alleged contracts with Putnam.  Given that the gist of this action is that Great Southern did not treat the wood to the requested treatment levels, the District Court is due to be affirmed.

      C.    <u>Summary judgment on the negligence and strict liability claims may also be affirmed because the claims are barred by the economic loss doctrine.</u>

Even if this Court finds the District Court erred in dismissing the tort claims based on the statute of limitations or the gist of the action doctrine, it should still be affirmed under the economic loss doctrine.  Although the District Court did not include this doctrine in its summary judgment opinion, it was raised by Great Southern at summary judgment, and this Court may properly affirm the District Court on any ground that has support in the record.  *See Campbell v. Sussex County Federal Credit Union*, ___ Fed.Appx. ___, 2015 WL 690435, at *3 (3d Cir. Feb. 19, 2015).  As addressed below, Plaintiffs have not claimed any damage in this case other than to the structure itself, so the negligence and strict liability claims are barred by the economic loss doctrine.

The economic loss doctrine prohibits plaintiffs from recovering **in tort** economic losses to which their entitlement flows **only from a contract**.  *Addie v. Kjaer*, Case No. 2004-135, 2009 WL 453352 at * 4, n. 5 (D.V.I. Feb 23, 2009) (citing *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir.2002) (emphasis supplied)).  This Court has observed that pursuant to the economic loss doctrine, "a

manufacturer in a commercial relationship has no duty under either a negligence or a strict-products liability theory to prevent a product from injuring itself." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995). Thus, a plaintiff who sues in tort for product defect may not recover the "loss of value or use of the product itself, cost to repair or replace the product, or the lost profits from the loss o[f] use of the product." *Potomac Plaza Terraces v. QSC Prods.*, 868 F. Supp. 346, 354 (D.D.C. 1994). Instead, a plaintiff may recover in tort only for personal injury or damage to "other property." *East River SS. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 106 S. Ct. 2295 (1986) (holding that economic loss doctrine bars recovery in tort when "no person or other property is damaged," such that "the resulting loss is purely economic.").

Plaintiffs do not seek personal injury damages in this case. Indeed, Plaintiffs have suffered no personal injuries, and they also admit that no renters of the property suffered any personal injuries from the alleged defective wood. A.934 (Lucht depo., p. 177). Accordingly, the only remaining issue on the negligence and strict liability claims is whether Plaintiffs have suffered damage to "other property."[2] Any such argument fails, however, under the "integrated system doctrine," which provides that when an alleged defective product becomes

---

[2] Obviously, under the economic loss doctrine, Plaintiffs cannot recover for damage in tort to the lumber itself.

integrated into a larger product, courts should treat such damage as harm to the

product itself.  The Restatement version has been summarized as follows:

> A product that fails to function and causes harm to
> surrounding property has clearly caused harm to other
> property. However, when a component part of a machine
> or a system destroys the rest of the machine or system,
> the characterization process becomes more difficult.
> ***When the product or system is deemed to be an
> integrated whole, courts treat such damage as harm to
> the product itself***. ***When so characterized, the damage is
> excluded from the coverage of this Restatement.*** A
> contrary holding would require a finding of property
> damage in virtually every case in which a product harms
> itself and would prevent contractual rules from serving
> their legitimate function in governing commercial
> transactions.

Comment e to RESTATEMENT (THIRD) OF TORTS § 21 (DEFINITION OF HARM TO

PERSONS OR PROPERTY:" RECOVERY FOR ECONOMIC LOSS) (emphasis added).

Here, Plaintiffs' negligence and strict liability claims fail under the

economic loss doctrine because, by their own admission, the alleged defective

wood has been integrated into the whole structure that they allege has been

damaged:

> Q.    In your opinion, did the addition and the deck, lumber used in
> the addition and the deck become an integrated part of the home when
> it was installed?
>                        *****
> THE DEPONENT:  The addition was added to appear to be a uniform
> part of the home as if there was not an addition; **it was all one**.

A.920 (Lucht depo., p. 163) (emphasis added). *See also,* A.777 (Lucht depo., p. 21) (admitting that the original structure and new addition "operated as one home."); A.778 (Lucht depo., p. 22) (acknowledging that "the houses are integrated into one home.").

Pursuant to the integrated system doctrine, the wood at issue and the other parts of the house allegedly damaged are "deemed to be an integrated whole," which the Restatement requires should be treated as "harm to the product itself." Plaintiffs do not dispute that the alleged defective wood has become integrated into the whole structure. To the contrary, they freely admit it.

A Report and Recommendation by Magistrate Ruth Miller on Great Southern's Motion to Dismiss in an earlier case that Whitecap filed against Great Southern and Putnam is very instructive on this issue. *See Whitecap Investment Corp. v. Putnam Lumber & Export Co., et. al.*, Civ. No. 2010-139, 2013 WL 1155430 (D.V.I. Feb. 19, 2013), *adopted in part rejected in part on other grounds*, 2013 WL 1155241 (D.V.I. Mar. 21, 2013). In determining that Whitecap's tort claims against Great Southern were barred by the economic loss/integrated system doctrine, Magistrate Miller analyzed what constitutes "other property." Magistrate Miller observed that courts have employed "at least three different approaches" to the "other property" analysis, which include:

> 1. Under the 'object of the bargain' approach, if a component part causes damages to the product bargained for, then, in

most jurisdictions, the remaining part of the purchased product would not be considered 'other property.' (citing *Casa Clara v. Charley Toppins & Sons, Inc.*, 620 So. 2d 1244, 1247 (Fla. 1993) (allegedly defective concrete became an integral part of finished house and thus did not injure "other" property); *Gregory v. Atrium Door & Window Co.*, 415 S.e.2d 574, 575 (N.C. App. 1992) (water damage to flooring caused by malfunctioning and deteriorating doors constituted economic loss). On the other hand, items purchased and bargained for separately from the 'product' would more likely be considered 'other property.'…

2. Under a more relaxed standard, other courts permit tort recovery for damage caused by component parts to other parts on an integrated product in some cases. (citing *Jimenez v. Superior Court*, 58 P.3d 450 (Cal. 4th 2002), where the court held 'the economic loss rule does not bar a homeowner's recovery in tort for damage that a defective window causes to other parts of the home in which it has been installed. *Id.* at 457. The *Jimenez* court explained however that '[w]e have no occasion here to consider whether defective raw materials should be treated in the same manner as component parts or whether there may be situations in which the economic loss rule would bar recovery for damages that a defective component part causes to other portions of the finished product of which it is a part.' *Id.*)

3. And still other courts tend to deny tort recovery where the components or other property became part of an integrated product, regardless of what was the 'object of the bargain.' (citing *Transport Corp. of America v. IBM Corp., Inc.*, 30 F.3d 953, 957 (8th Cir. 1994) (under Minnesota law, damage to components integrated into computer system is not considered damage to other property for purposes of the economic loss doctrine); *RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 21 CMT. E (1998)* (noting "[w]hen the product or system is deemed to be an integrated whole, courts treat such damage as harm to the product itself")).

30

*Whitecap*, 2013 WL 1155430 at *9 (citing *OneBeacon Ins. Co. v. Deere & Co.*, 778 F. Supp.2d 1005, 1009 (E.D. Mo. 2011) (quoting *Albers v. Deere & Co.*, 599 F. Supp.2d 1142, 1155, 1158, 1160 (D.N.D. 2008).

Under any of the three approaches, Plaintiffs' negligence and strict liability claims are barred under the economic loss doctrine.

In sum, given that there has been no damage to "other property," the negligence and strict liability claims fail as a matter of law.  *See e.g.*, *Association of Apartment Owners of Newtown Meadows ex. rel. its Bd. of Directors v. Venture 15, Inc*., 167 P.3d 225, 287 (Haw. 2007) (citing various cases); Charles J. Nagy, Jr., AMERICAN LAW OF PRODUCTS LIABILITY 3D, § 114:6 (2013) ("Building products lose their identity as separate products once incorporated into real estate. Thus, for example, windows installed in condominium units are part of an 'integrated system' such that, even if the condominium units suffered incidental damage as a result of failed windows, the dispute is a commercial one for which there I no recovery in tort." … "The economic loss doctrine also bars homeowners' negligence and strict liability claims against the supplier of a product used in construction, where the homeowners had no direct contacts or contractual relationship with the supplier, or with the subcontractor who allegedly negligently applied the product."); *Redarowicz v. Ohlendorf*, 441 N.E.2d 324 (Ill. 1982)

(holding that homeowner who sought recovery for costs of repair and replacement of defective chimney, wall, and patio could not recover in tort).

> D. <u>Summary judgment on the negligence and strict liability claims may also be affirmed because Great Southern did not owe Plaintiffs a legal duty</u>.

Even if this Court finds the District Court erred in dismissing the tort claims based on the statute of limitations or the gist of the action doctrine, and cannot be affirmed based on the economic loss doctrine, it may still be affirmed because Great Southern did not owe Plaintiffs a legal duty. Great Southern merely treated lumber that Putnam provided to the specifications dictated by Putnam. A.233; 267; 273; 286; 293 (Freeman depo., pp. 34-36; 172; 196; 235; 362-64). Great Southern did not know where or to whom the lumber would be sold and for what purpose. A.306 (Freeman depo., pp. 315-16); *see also* A.368 (Noble depo., pp. 210-13). There is no basis to place a duty on Great Southern with regard to Plaintiffs.

"Whether a defendant owes a legal duty to the plaintiff generally is a question of law for the court to determine." *Sickler v. Mandahl Bay Holding Inc.*, 2014 WL 3107449, at *3 (V.I. Super. July 7, 2014). Great Southern's only obligation in this case was to treat the lumber to the specifications that Putnam provided. It has no relationship with Plaintiffs, much less any relationship that

32

would rise to the level of a legal duty.  Accordingly, summary judgment is due to be affirmed on the negligence and strict liability claims.

## III.    The District Court properly granted summary judgment on the common law breach of warranty claims.

Plaintiffs argue that the District Court erred in entering summary judgment on their common law breach of warranty claims, claiming that the Court applied the wrong statute of limitations.  Appellants' Brief, pp. 14-16.  The District Court concluded that the sale of lumber involves "goods," and therefore any contractual claims, including the breach of warranty claims against Great Southern, are covered by the U.C.C.  A.14-19; 32 (Opinion, pp. 10-15; 28).  As such, the District Court held that the four year statute of limitations under the U.C.C. controlled Plaintiffs' breach of warranty claims, as opposed to the six year statute of limitations for common law breach of warranty.[3]

The District Court correctly held that the breach of warranty claims were time barred.  A.32-37 (Opinion, pp. 28-33).  While the District Court should be affirmed on that basis alone, as discussed below, the granting of summary judgment on the common law breach of warranty claims may be affirmed on other grounds.

---

[3] Plaintiffs' common law breach of warranty claims would also be time barred under a six year statute of limitations, as they purchased the wood, at the latest, in 2006, yet did not file suit until February 2013.

A.    <u>Based on its finding that the U.C.C. governs, the District Court correctly determined that a four year statute of limitations applies to any warranty claims, whether cast under the common law or the U.C.C.</u>

Plaintiffs argue that the District Court erred in applying the U.C.C. four year statute of limitations to their breach of warranty claims.  Appellants' Brief, pp. 14-16.  Plaintiffs argue that the Court should have applied a six year statute of limitations for common law contract/warranty claims in the Virgin Islands.  The District Court, however, applied the "purpose of the contract" test and concluded that this case involves the "sale of goods" and concluded that the four year statute of limitations in the U.C.C. governs.  A.15-19; 32 (Opinion, pp. 11-15; 28).

Plaintiffs have not disputed the District Court's "purpose of the contract" analysis or conclusion, so whether or not this case involves the U.C.C. is not raised in this appeal.  Rather, the issue is whether, in a case governed by the U.C.C., a plaintiff can also have a common law breach of warranty claim.  Plaintiffs argue that "common law claims are not necessarily subsumed by the UCC, but rather may exist and be asserted together with UCC-based warranty and contract claims." Appellants' Brief, p. 15.  The District Court was correct in concluding that Plaintiffs could not benefit from a six year common law statute of limitations in a case that it found to be governed by the U.C.C.

Plaintiffs cited no applicable authority to support their position, which is understandable, as a leading treatise states that "the comprehensive set of rules

found in Article 2 of the U.C.C. should be considered to displace common law warranty causes of action with respect to the sale of goods. … A court should strike common law claims on the ground that this field is occupied by statute." Barkley Clark and Christopher Smith, *Law of Prod. Warranties* § 1:14 (Dec. 2014).

Courts from around the country, when faced with this issue, confirm that a U.C.C. breach of warranty claim displaces a warranty claim under the common law. *See e.g.*, *Omni USA, Inc. v. Parker-Hannifin Corp.*, 964 F. Supp.2d 805, 840 (S.D. Tex. 2013) ("Texas Courts apply the UCC to contracts for the sale of goods even if the parties characterize the claim as a common law breach of contract or breach of warranty case."); *Mitchell v. General Motors, LLC*, No. 3:13-CV-498-CRS, 2014 WL 1319519, at *14, n. 4 (W.D. Ky. Mar. 31, 2014) ("We do note, however, that Count VI [for common law breach of warranty] may also fail on displacement grounds.") (citing *Farm Credit Bank of Louisville v. U.S. Mineral Prods. Co.*, 864 F. Supp. 643, 647 (W.D. Ky. 1994) ("The enactment of the U.C.C. in Kentucky was a clear expression of legislative intent to occupy the field of commercial transactions."); *Hitachi Electronic Devices (USA), Inc. v. Platinum Technologies, Inc.*, 621 S.E. 2d 38, 41 (S.C. 2005) ("Article 2 comprehensively addresses a buyer's remedies for breach of warranty.…This comprehensive system of remedies for breach of warranty displaces the common law.  Consequently, the

Buyer cannot pursue common-law remedies for the Seller's alleged breach of warranty."); *First Fidelity Bank, N.A. v. First Interstate Bank of Oregon, N.A.*, 716 F. Supp. 1359, 1362 (D. Ore. 1989) (in a transfer warranty case, stating that "[t]he UCC provisions governing warranties incorporate and replace all express and implied warranties formerly available under the common law."); *Rector v. Karlstad Farmers Elevator*, No. A07-0693, 2008 WL 3287910, at *2 (Minn. App. Aug. 12, 2008) ("Minnesota courts have interpreted and applied the U.C.C. as a bar to common-law claims arising from the sale of goods and other transactions….Thus, we hold that Article 2 of the U.C.C. provides the exclusive remedies here respecting Karlstad's sales of defective grain.").

Plaintiffs argue that their "common law [breach of warranty] claims are not necessarily subsumed by the UCC," yet notably absent from their brief is any case where that was the issue for the court to decide. Appellants' Brief, p. 15.[4]  As discussed in Part IV, the District Court was correct in finding the warranty claims to be time barred under the U.C.C. four year statute of limitations.

B.     <u>There are grounds other than statute of limitations for affirming the District Court's dismissal of the common law breach of warranty claims.</u>

---

[4] The sole case Plaintiffs rely upon to argue that their common law warranty claims are not subsumed by the U.C.C. does not say that at all.  In *White v. S&E Bakery*, 1991 WL 11818240 (V.I. Terr. Ct. 1991), the issue of whether common law breach of warranty claims are displaced by the U.C.C. was not before the Court.

Even if the common law breach of warranty claims are not time barred, there are other reasons for affirming the District Court. And, given that this Court "may affirm the District Court's decision 'on any ground supported by the record,'" the District Court may be affirmed whether or not these grounds served as a basis for the District Court order. *See Campbell v. Sussex County Federal Credit Union*, ___ Fed.Appx. ___, 2015 WL 690435, at *3 (3d Cir. Feb. 19, 2015) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). We address each reason in turn.

1.    <u>Plaintiffs did not respond to Great Southern's merits based arguments at summary judgment, so their common law breach of warranty claims have been abandoned.</u>

First, in its Motion for Summary Judgment, Great Southern argued that any common law breach of warranty claims were barred because there was no express warranty, nor could Plaintiffs satisfy the requirements under the Restatement for an implied warranty claim. A.203-06 (Great Southern's Motion for Summary Judgment, pp. 11-14). Plaintiffs did not respond to either of these arguments at the summary judgment stage. As such, they abandoned their common law warranty claims at summary judgment so the District Court may be affirmed on that basis. *See e.g.*, *Seals v. City of Lancaster,* 553 F.Supp.2d 427, 432 (E.D. Pa.2008) ("Plaintiff failed to address this portion of defendant's motion for summary judgment in her response ... [t]herefore, plaintiff's failure ... constitutes

abandonment of those claims."); *Blakeman v. Freedom Rides, Inc.*, 2013 WL 3503165, at *13 (D. Del. July 10, 2013) ("In such situations, where a party responds to a dispositive motion, but only attempts to defend some subset of the claims that are subject to the motion, courts have consistently held that the claims that are not defended are deemed abandoned."); *Lawlor v. ESPN Scouts, LLC,* 2011 WL 675215, at *2 (D.N.J. Feb. 16, 2011) (promissory estoppel claim abandoned where defendants, in moving to dismiss, argued that the plaintiff was paid the amount owed, and where plaintiff did not respond in any way to the defendants' argument) (citing *Conroy v. Leone,* 316 F. App'x 140, 144 n.5 (3d Cir.2009) ("We find this undeveloped argument has been waived.")); *Carraway v. Borough of Wilkinsburg,* 2009 WL 2981955, at *2 (W.D.Pa. Sept. 11, 2009) ("The Court 'may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.'") (citations omitted).

2.    <u>Plaintiffs' common law breach of express warranty claim also fails because Great Southern gave Plaintiffs no express warranty, and any common law implied warranty claims fail for lack of privity and because Plaintiffs are not third party beneficiaries.</u>

Second, the District Court may be affirmed on the merits, as the breach of warranty claims fail as a matter of law.

Under Virgin Islands law, a person must be in privity of contract to sue for damages for breach of contract. *Matos v. Nextran*, 2009 WL 2477516, at * 5 (D.VI. Aug. 10, 2009). However, a third party who has standing as an intended beneficiary under the contract may sue for breach of express[5] and implied warranties. *Whitecap Invest. Corp. v. Putnam Lumber & Export Co.*, 2013 WL 2365406, at *5 (D.V.I. 2013) (quoting *Matsos*, 2009 W.L. 2477516 at * 5). In this case, Plaintiffs have no standing as an intended beneficiary to any contract for pressure treatment services between Putnam and Great Southern so the District Court is due to be affirmed.

Section § 302 of the Restatement (Second) of Contracts requires Great Southern to have intended to give Plaintiffs the "benefit of the promised performance" and specifically provides as follows:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
>
>> (a) the performance of the promise will satisfy an obligation of the promise to pay money to the beneficiary; or

---

[5] Plaintiffs have not identified any alleged express warranty supposedly extended by Great Southern to Plaintiffs. Thus, the District Court was correct in finding that "no explicit warranty of future performance was given to purchasers of GSWP lumber." A.36 (Opinion, p. 32).

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

Restatement (Second) of Contracts § 302.

Here, there is no evidence that either Putnam or Great Southern intended Plaintiffs to be beneficiaries under any contract or for them to have any recognizable rights of performance under any contract.  The undisputed evidence is that no contract documents other than the invoices exist, much less any documents that even mention Plaintiffs, Whitecap or Paradise Lumber.  In fact, there is no evidence of any kind that demonstrates Great Southern or Putnam intended the agreements for pressure treatment services to benefit anyone other than themselves, much less that they intended for Plaintiffs to be bestowed rights under their agreements.[6]

This case is analogous to the typical situation in which a product seller knows that an intermediate buyer of its products will resell the product.  Courts have held time and again that such a scenario is insufficient to make the third party end user an intended beneficiary of the contract.  For example, in *Corrugated*

---

[6] As set forth above, Great Southern did not know where the lumber would be sold, to whom it would be sold, or what it would be used for.

40

*Paper Products, Inc. v. Longview Fibre, Co.*, 868 F.2d 908, 911 (7th Cir. 1989),

the Seventh Circuit recognized:

> [C]ourts have generally held that a third party is not a beneficiary of a sales agreement merely because both contracting parties know that the product would be resold to the third party, or to a class of which the third party was a member. Even where the subsequent purchaser is mentioned by name in the contract, such a third party is 'no more than a known remote buyer' in the absence of further evidence of an intent to benefit the third party.

*Id.* (quoting in part *Kaiser Aluminum & Chemical Corp. v. Ingersoll-Rand Co.*, 519

F.Supp. 60, 73 (S.D. Ga. 1981). *See also*, *Spiegel v. Sharp Electronics Corp.*, 446

N.E.2d 1040, 1045 (1st Dist. Ill. 1984) ("mere knowledge of resale to third parties

is [not] sufficient to create third-party beneficiary status"); *Commonwealth*

*Propane v. Petrosol Int'l*, 818 F.2d 522, 531 (6th Cir. 1987) (holding that fact that

propane supplier knew the propane it sold to distributor would be immediately

resold to plaintiff did not make plaintiff an intended third party beneficiary of the

contract); *Slate Printing Co. v. Metro Envelope Co.*, 532 F.Supp. 431, 433 (N.D.

Ill. 1982) (the fact that paper supplier knew that intermediate buyer would process

and sell to an end user in the distributive chain did not make the end user an

intended beneficiary of the contract); *Grams v. Milk Products, Inc.*, 2004 WL

1418010 (Wis. App. June 17, 2004) (plaintiff purchaser/end user of specialized

milk for calves was not intended beneficiary of contract between milk producer

and retailer even though the parties knew that that the milk was formulated

41

primarily for use by the plaintiff); *Cooper Power Systems, Inc. v. Union Carbide Co.*, 123 F.3d 675, 680 (7th Cir. 1997) ("[Plaintiff's] arguments . . . all boil down to an assertion that [manufacturer] knew that [distributor] was selling paint . . . to [plaintiff] or companies like [plaintiff]. Yet the fact that a seller knows that an intermediate buyer of its products will immediately resell the product is not sufficient to make the ultimate buyer an intended beneficiary of the original sales contract.").

In sum, there is no evidence that Putnam and Great Southern specifically intended Plaintiffs to be a beneficiary of any wood treatment agreements, or that they intended to give Plaintiffs rights under any agreements. Accordingly, the District Court is due to be affirmed for dismissing the common law breach of warranty claim. *See Whitecap*, 2013 WL 2365406, at *5 (dismissing Whitecap's common law breach of warranty claims against Great Southern for the same arguments made here).[7]

---

[7] The District Court briefly addressed this issue in Footnote 2 of its opinion. A.37-38 Opinion, Order, p. 33, n. 2). Plaintiffs make quick mention of this issue in their brief and argue that the District Court's "queries are *dicta* that are not necessary to the district court's decision on the statute of limitations issues, and the court did not in its *dicta* purport to make any definitive ruling on the privity questions." Appellants' Brief, p. 20, n. 5. None of that matters to this Court's analysis. Great Southern raised this issue at the summary judgment stage, and this Court may affirm the District Court whether this issue was the basis of its ruling or not. *See Campbell v. Sussex County Federal Credit Union*, ___ Fed.Appx. ___, 2015 WL 690435, at *3 (3d Cir. Feb. 19, 2015) (recognizing that this Court "may affirm the

**IV.    The District Court correctly granted summary judgment on Plaintiffs'
U.C.C. based breach of warranty claims.**

A.    The District Court correctly determined the U.C.C. based breach of
warranty claims are barred by the statute of limitations and that the
"discovery rule" did not toll the running of the statute of limitations.

Without referencing a single U.C.C. case, Plaintiffs argue that the discovery

rule applies to contract/warranty claims under the U.C.C., and that the District

Court erred in holding that the discovery rule does not apply.  Appellants' Brief,

pp. 18-20.  Plaintiffs' argument fails, as the U.C.C./Virgin Islands code states

explicitly that a "cause of action accrues when the breach occurs, regardless of the

aggrieved party's lack of knowledge of the breach and [a] breach of warranty

occurs when tender of delivery is made."  11a V.I.C. § 2-725(2).  A Virgin Islands

case relied upon by the District Court, *Fombrun v. Controlled Concrete Products,
Inc.*, Civ. No. 198/1984, 1985 WL 1177813 (V.I. Terr. Ct. Nov. 7, 1985),

unequivocally rejects Plaintiffs' argument, stating that "[i]t is perfectly clear then,

that under the U.C.C. the cause of action accrues when the breach, if any, occurs

and not when the breach is discovered."  Id. at *4.

Plaintiffs' brief fails to address several points.  First, Plaintiffs do not even

attempt to reconcile their argument with the language of 2-725(2), which expressly

states that the discovery rule does not apply to U.C.C. contractual claims.  Second,

---

District Court's decision 'on any ground supported by the record") (quoting
*Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

Plaintiffs' brief does not even mention the *Fombrun* decision from the Virgin Islands. Third, Plaintiffs' brief does not even mention (much less attempt to distinguish or discredit) the various cases cited by the District Court for the proposition that "[t]he majority of circuit courts to have considered whether the discovery rule tolls the UCC's statute of limitations have found that it does not." A.27 (Opinion, p. 23). Fourth, Plaintiffs have not even attempted to address the District Court's finding that the Third Circuit, as well as other circuits, have declined to apply the discovery rule to Article Three of the U.C.C. A.28 (Opinion, p. 24). Fifth, Plaintiffs have not cited to a single U.C.C. case in the Virgin Islands, the Third Circuit, or anywhere in the country that supports their argument.

Instead, Plaintiffs solely rely on 2-725(4), which states that "[t]his section does not alter the law on tolling of the statute of limitations nor does it apply to causes of action which have accrued before this title becomes effective." Plaintiffs rely on this provision to argue that "the Virgin Islands UCC should thus be read as including the discovery rule." Appellants' Brief, p. 19. They argue this despite the fact that 2-275(2) expressly states that the discovery rule does <u>not</u> apply. Plaintiffs do not even attempt to explain why this Court should ignore the rules of statutory construction and read 2-725(2) out of the statute, and instead make arguments such that interpreting the statute as written would be "unfair" and "unduly harsh." Appellants' Brief, p. 20.

Plaintiffs fail to provide any case citations or legal analysis to explain their position, but the District Court's analysis is the correct interpretation and fully supported. The District Court correctly determined that, pursuant to basic rules of statutory construction, "the preferred construction of a statute and its regulation is the one that gives meaning to all provisions." A.22 (Opinion, p. 18) (quoting *Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197, 202 (3d Cir. 1998). The District Court, in a thorough analysis, correctly determined that 2-725(2) explicitly carves the discovery rule out, and 2-725(4), which states that "the law on tolling" is not altered, applies to equitable tolling, and not the discovery rule.[8] The District Court's interpretation gives meaning to both provisions, which is something that Plaintiffs have not even attempted to do.

The District Court is not alone in reaching this decision. As already addressed, courts in the Virgin Islands and cases from around the country have reached the same result. Accordingly, the District Court's ruling should not be disturbed, as the wood was delivered by 2006 at the latest and Plaintiffs waited more than four years to file suit.

B.    <u>The U.C.C. breach of warranty claim cannot stand even if not barred by the statute of limitations because Great Southern was not in privity with Plaintiffs, and there is no personal injury.</u>

---

[8] Plaintiffs have not argued that equitable tolling applies in this case.

Even if the U.C.C. breach of warranty claim is not barred by the statute of limitations, it still fails due to lack of privity and lack of personal injury.  *See e.g., Whitecap Investment Corp. v. Putnam Lumber & Export Company*, Civ. No. 2010-139, 2013 WL 2365406, at * 5 (D.V.I. May 30, 2013) (finding the U.C.C. to be "not applicable" to Whitecap's U.C.C. breach of warranty claims against Great Southern due to lack of privity and lack of personal injury).

Any claims for breach of express or implied warranty according to 11a V.I.C. § 2-313 and § 2-314-315 respectively, generally require privity of contract. *Matos v. Nextran, Inc*., 2009 WL 2477516, at *5 (D.V.I. 2009).  Furthermore, even in the absence of privity, "[a] seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured in person by breach of the warranty."  11a V.I.C. § 2-318 (emphasis added).  Thus, the breach of warranty claims under the U.C.C. fail if: (1) there is no privity; and (2) there are no personal injuries.

The privity issue requires little discussion, as Plaintiffs freely admit that they have never "had any verbal, written, or electronic communication with Great Southern."  A.910 (Lucht depo., p. 153).  In fact, Plaintiffs have not even had discussions with Putnam, which is the entity for which Great Southern provided some wood treatment services.  A.860 (Lucht depo., p. 103).  According to Plaintiffs, the sole factual basis for the breach of warranty claims stems from their

relationship with Whitecap/Paradise Lumber.  A.881 (Lucht depo., p. 124).  Given

the lack of privity with Great Southern, Plaintiffs' breach of warranty claims under

the U.C.C. fail as a matter of law, and the District Court is due to be affirmed.

Nor can Plaintiffs' U.C.C. warranty claims survive under 2-318, which

extends warranties only to those people who are injured "in person."  11a V.I.C. §

2-318.  A cursory review of Plaintiffs' amended complaint shows that there are no

personal injuries at issue in this case.  A. 115 (Amended Complaint, ¶ 16).

Furthermore, Plaintiffs have acknowledged that no renters have ever been injured

because of rotted or decaying wood.  A.934 (Lucht depo., p. 177).  Given the

absence of personal injury, the breach of warranty claims under the U.C.C. fail as a

matter of law.  See *Whitecap*, 2013 WL 2365406, at *5 (dismissing Whitecap's

U.C.C. breach of warranty claims for the reasons argued here).

## V.     The District Court properly granted summary judgment on Plaintiffs' Deceptive Trade Practices Act claim

Next, Plaintiffs argue that the District Court improperly granted summary

judgment on their Deceptive Trade Practices Act ("DTPA") claim.  Plaintiffs' sole

argument is that the District Court erred in applying a two-year statute of

limitations as opposed to a six-year statute of limitations.  Appellants' Brief, pp.

16-18.  Plaintiffs are incorrect.

Furthermore, the District Court can be affirmed on grounds raised by Great

Southern at summary judgment to which Plaintiffs failed to respond: Plaintiffs do

not qualify as a "consumer" under the DTPA, and the DTPA claim is also barred

by the economic loss doctrine. We address these issues in turn.

A.     Plaintiffs DTPA claim is barred by the statute of limitations

The District Court was correct in ruling that Plaintiffs' DTPA claim was

barred by the statute of limitations. As the District Court observed, when Plaintiffs

filed their complaint in February 2013, the statute of limitations for a DTPA claim

was two years. A.48 (Opinion, p. 44) (citing V.I. Code Ann. Tit. 12A, § 108(j)

(2012)). In October 2013, _after_ the complaint was filed, the DTPA was amended

to extend the statute of limitations to six years. A.48 (Opinion, p. 44).

The District Court properly ruled that the two year statute of limitations

applies to this case, as opposed to the later enacted six year limitations period. In

_Lieberman v. Cambridge Partners, LLC_, 432 F.3d 482, 489 (3d Cir. 2005), this

Court stated that "extending a statute of limitations after the pre-existing period of

limitations has expired impermissibly revives a moribund cause of action." (citing

_Hughes Aircraft Co. v. United States ex rel. Schumer,_ 520 U.S. 939, 950 (1997)).

The District Court also recognized that this Court has observed that "the DTPA

limitations period 'begins running from the date the violation of the statute

occurred, not the date the violation was discovered[.]'" A.50 (Opinion, p. 46)

(quoting _Island Insteel Sys., Inc. v. Waters_, 296 F.3d 200, 214 (3d Cir. 2002)).

Plaintiffs completed construction of their house in December 2006, so any

purported misrepresentation or other DTPA violation occurred before that time.

This case was not filed until February 2013, so the District Court is correct that the

DTPA claim is barred by the statute of limitations.[9]

### B.    Plaintiffs' DTPA claim is also barred because they are not a "consumer."

Even if the DTPA claim is not barred by the statute of limitations, the

District Court may be affirmed on other grounds.  The DTPA defines a

"consumer" as "a purchaser or lessee or prospective purchaser or lessee of

consumer goods or services or consumer credit, including a co-obligor or surety."

V.I. St. 12A § 102(d).  Here, Plaintiffs did not purchase anything directly from

GSWP, so they are not a "consumer" with regard to Great Southern under the

DTPA.  *MRL Development I, LLC v. Whitecap Investment Corp.*, 2014 WL

793132, at *7 (D.V.I. Feb. 26, 2014) ("The only party in this case who did

purchase goods from Putnam was Paradise Lumber.  Thus, MRL is not a

"consumer" as defined by the Virgin Islands Code.") (citing *Knox v. Quest*

---

[9] Even if the six year statute of limitations applies, the District Court is still due to be affirmed.  As the District Court observed, any alleged violation occurred, at the latest, in December 2006.  This was more than six years before the case was filed in February  2013.  Given that "the DTPA limitations period 'begins running from the date the violation of the statute occurred, not the date the violation was discovered,'" the DTPA claim is also barred under a six year statute of limitations. *See Island Insteel Sys., Inc. v. Waters*, 296 F.3d 200, 214 (3d Cir. 2002).

*Diagnostics, Inc.*, 2012 WL 400333, at \*5-6 (D.V.I. 2012). Accordingly, the

District Court's decision can be affirmed on this basis.[10]

## VI. Summary Judgment may be affirmed on all claims because Plaintiffs cannot prove that the wood they claim to be defective was treated by Great Southern.

Finally, the District Court may be affirmed based on a very fundamental

fact: Plaintiffs cannot prove that the wood at issue in this case was treated by Great

Southern. The failure to prove this foundational requirement is dispositive of all

claims. For purposes of this appeal, Great Southern will assume that all wood at

issue in this case was purchased from Whitecap. Although Great Southern treated

some wood that Putnam sold to Whitecap, approximately 20% of the wood

Whitecap sold to consumers came from sources <u>other</u> than Putnam and was

therefore not treated by Great Southern.[11]  A.649 (Rourke depo., p. 74).

---

[10] Furthermore, "courts generally consider a deceptive trade practices action to be a tort claim, albeit one authorized by statute." *Brady v. Cintron*, Civ. No. 2010-0014, 2011 WL 4543906, at \*10 (V.I. Sept. 27, 2011). Given that it is a tort claim, summary judgment is due to be affirmed on the DTPA claim under the economic loss doctrine and gist of the action doctrine, which are discussed in Sections II. Further, Plaintiffs did not address Great Southern's merit based arguments in their summary judgment brief so the District Court may be affirmed on the abandonment theory.

[11] It is also important to note that the Great Southern was not the only entity that treated wood sold by Putnam. The wood that Great Southern treated was commingled with wood treated by others. *See* A.368; 369 (Noble depo., pp. 210; 213-14). Therefore, even if Plaintiffs could prove that all wood they purchased came from Putnam (which they cannot), their burden of proof regarding product

As a starting point, Plaintiffs cannot even prove that the wood they purchased from Whitecap was treated by Great Southern. Indeed, the treater of the wood Plaintiffs purchased was not was not identified on the wood. Perhaps some of it was treated by Great Southern, or perhaps all of it came from the roughly 20% of the wood sold by Whitecap that did not come from Putnam and therefore indisputably was not treated by Great Southern. Obviously, given that Mr. Lucht had no contact with Putnam or Great Southern, he has no knowledge as to who treated the wood. Even if some or all of it was treated by Great Southern, however, Mr. Lucht confirmed in February 2014 that approximately 75% of his deck boards had been replaced by wood that had not been treated by Great Southen. A.841 (Lucht depo., p. 85). Plaintiffs' wood treatment expert, Kevin Flynn, obtained many deck board samples for testing in May 2014. While Flynn claims the wood he sampled was poorly treated, he had no idea that 75% of the deck had been replaced. A.527 (Flynn depo., p. 152). Nor did he know that Putnam did not sell (and therefore Great Southern did not treat) approximately 20% of the wood sold by Whitecap, and he admits he did not take it into account in his methodology. When asked if this information would give him "pause" about his willingness to testify that this wood came from Putnam, he admitted "[t]hat would be helpful information, yes.," and he agreed it would "reduce [his]

identification has not been satisfied because not all of that wood was necessarily treated by Great Southern.

confidence and [his] opinions that this wood came from Putnam and was treated by Great Southern." A.542-32 (Flynn depo., pp. 167-68).

"Proximate causation is a necessary element in proving a tort case under theories of both strict liability and negligence." *Chelcher v. Spider Staging Corp.*, 892 F. Supp. 710, n. 8 (D.V.I. 1995). In addition, if the wood was not treated by Great Southern, there can be no warranty or contractual claims. Here, Plaintiffs have no idea if the wood their expert tested was treated by Great Southern or not. Given the failure to prove this fundamental fact, summary judgment is due to be affirmed on all claims.[12]

---

[12] Finally, to the extent this Court determines that reversal is warranted on any claims, the only proper party on remand should be MRL Development, LLC. As Great Southern argued at summary judgment, at all relevant times, the property at issue was owned by plaintiff MRL Development. Mr. Lucht did not own the property until December 2012, at which time he purchased it from MRL Development for $10.00. A.824-25 (Lucht depo., pp. 68-69). The structure at issue in this case was completed in December 2006. A.784 (Lucht depo., p. 28). MRL Development owned the property when the wood was purchased, when the structure was completed, when the wood allegedly started to fail, and when the wood started to be replaced. Thus, Mr. Lucht is not a proper party.

## **CONCLUSION**

For the above stated reasons, the summary judgment in favor of Defendant

Great Southern is due to be AFFIRMED.

LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
400 North 20th Street
Birmingham, AL  35203
Tel: (205) 581-0700/Fax: (205) 380-9140


By: /s/ S. Andrew Kelly
     **S. Andrew Kelly, BAR NO. 1278**


Daryl C. Barnes, Esq., BAR NO. 336
dbarnes@bryantbarnes.com
BARNES & BENOIT, LLP
Attorneys for Defendant
1134 King Street, 2nd Floor
Christiansted, VI 00820
Tel: (340) 773-2785 / Fax: 773-5427

## **<u>CERTIFICATIONS</u>**

Certificate of Compliance with Word Count pursuant to Fed. R. App. P.

32(a)(7)(C):  I hereby certify that this brief is typed in 14 point Times New Roman

and contains 13,484 words.

Certification of text and virus detection pursuant to L.A.R. 31.1(c): I hereby

certify that the text of the electronic brief is identical to the text in the paper copies,

and that Symantec Endpoint Protection virus detection program has been run on

the electronic file and no virus was detected.

Certification of Bar Membership pursuant to L.A.R. 28.3(d):  I hereby

certify that the undersigned is a member of the bar of this Court.

> LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
> 400 North 20th Street
> Birmingham, AL  35203
> Tel: (205) 581-0700/Fax: (205) 380-9140
>
>
> By: /s/ S. Andrew Kelly
> **S. Andrew Kelly, BAR NO. 1278**

Daryl C. Barnes, Esq., BAR NO. 336
dbarnes@bryantbarnes.com
BARNES & BENOIT, LLP
Attorneys for Defendant
1134 King Street, 2nd Floor
Christiansted, VI 00820
Tel: (340) 773-2785 / Fax: 773-5427

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 27th day of  May, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following counsel of record:

Paul M. Platte, Esquire (V.I. Bar # 884)
Paul Platte, P.A.
1465 South Fort Harrison Ave., Suite 202
Clearwater, FL 33756
paul@paulplatte.com
Phone: (727) 474-1011

Alex Moskowitz, Esq. (V.I. Bar No. 1072)
P.O. Box 756
St. Thomas, VI 00804
amoskowitz@dtflaw.com
Phone: (340) 715-4436
Fax: (340) 715-4400

Robert A. Carlson, Esq.
LEE, HERNANDEZ, LANDRUM, GAROFALO, & BLAKE, APC
100 N. Biscayne Blvd., Suite 605
Miami, Florida 33132
rcarlson@lee-lawfirm.com
Phone: (305) 377-2323
Fax: (305) 377-2320

Thomas G. Wilkinson, Esq.
Jared D. Bayer
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
Twilkinson@cozen.com
Jbayer@cozen.com

Phone: (215) 665-2000
Fax: (215) 655-2013

Lisa M. Komives
Bolt Nagi, P.C.
5600 Royal Dane Mall, Suite 21
St. Thomas, VI 00802
lkomives@vilaw.com
Phone: (340) 774-2944
Fax: (340) 776-1639

                                                                      _____/s/ S. Andrew Kelly_____